**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION**

JASON EMERY                                                        PLAINTIFF
ADC # 510514

v.                              Case No. 1:19-cv-00111 JTK

WILSON, et al.                                                     DEFENDANTS

**MEMORANDUM AND ORDER**

## I.      Introduction

Plaintiff Jason D. Emery filed this pro se action pursuant to 42 U.S.C. § 1983, alleging cruel and unusual punishment while incarcerated at the Grimes Unit of the Arkansas Department of Correction (ADC) (Doc. No. 6).   Plaintiff asks for compensatory and punitive damages.

Pending before the Court are the Motion for Summary Judgment, Brief in Support, and Statement of Facts filed by Defendants Wilson and Davis (Doc. Nos. 51-53).   Plaintiff filed a Response, Brief in Support and Response to Statement of Facts (Doc. Nos. 54-56).

## II.     Complaint

Plaintiff alleges that on August 31, 2019, Defendants denied him water and access to the restroom for over ninety (90) minutes in the extreme heat during inside recreation time, resulting in him soiling himself and being ridiculed by other inmates (Doc. No. 6, pp. 6-7).   He states he suffered irreparable physical injury requiring treatment for constipation, colonitis,[1] abdominal pain and other issues related to this incident, including mental health treatment.   *Id.* at pp. 7-8. Plaintiff also alleges Defendant Wilson, who is African American, consistently displayed discriminatory behavior towards him and other white inmates.   *Id.* at p. 7.

---

[1] Colonitis is more commonly referred to as colitis, which is inflammation of the lining tissues of the large intestine (colon).

### III.  Summary Judgment Standard

Pursuant to FED.R.CIV.P. 56(a), summary judgment is appropriate if the record shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See Dulany v. Carnahan*, 132 F.3d 1234, 1237 (8th Cir. 1997).   "The moving party bears the initial burden of identifying 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'"   *Webb v. Lawrence County*, 144 F.3d 1131, 1134 (8th Cir. 1998) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (other citations omitted)).   "Once the moving party has met this burden, the non-moving party cannot simply rest on mere denials or allegations in the pleadings; rather, the non-movant 'must set forth specific facts showing that there is a genuine issue for trial.'"   *Id.* at 1135.   Although the facts are viewed in a light most favorable to the non-moving party, "in order to defeat a motion for summary judgment, the non-movant cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." *Id.*

### IV.  Defendants' Material Facts in support of Summary Judgment

According to Defendant Wilson's declaration, in August 2019, she was employed at the ADC Grimes Unit as sergeant (Doc. No. 51-3, p. 1). On August 31, 2019, her first day on shift as the housing sergeant, she worked in Housing Unit 4, where Emery resided.   Her duties included "supervision of the Housing Unit, the area, staff, and inmates that makeup the zone the Housing Unit is located in; and ensuring all inmate activity and movement in the barracks and entering and exiting of the Housing Unit is properly monitored and control[led]." *Id.* Wilson also oversaw the security, sanitation, safety training, count procedures, mass movements, metal detectors, and all other activities taking place in the unit, which is composed of 19-22 barracks----each barrack

2

consisting of two tiers that house 40-50 inmates. *Id.* at pp. 1-2.   Emery was assigned to 20 barracks.   *Id.* at p. 2.

On August 31, one officer was located upstairs in the control booth and could not leave that area until relieved by another officer.   *Id.*   Defendant Wilson was working alone in the unit vestibule, a circular hallway outside the 19-22 barracks that encompassed doors to each barracks and doors to the unit's inside recreation area.[2] *Id.*   From the barracks, Wilson could see inside the barracks and inside the inside recreation area.   *Id.*

Recreational time allows inmates to obtain exercise in the outside area of their housing unit.   Recreational time is one hour, and inmates who choose the inside recreation area have access to a basketball side and a handball side.   *Id.*   In the inside recreation area, inmates have access to water provided in a water cooler but do not have access to a restroom.   *Id.*   Inmates are encouraged to use the restrooms prior to going to inside recreation because, once there, they are not allowed to leave unless a medical emergency existed or other circumstances, like a staff member call for an inmate, necessitated an exception.   *Id.*   Many inmates were upset that day because Wilson would not allow them to roam between the basketball and handball sides while she was the only officer on the floor, as it would impose a security risk.   *Id.* at p. 3.

During inside recreation on August 31, Wilson recalled Emery came to the door on the handball side and stated he was hot and wanted to go inside.   *Id.* at p. 3.   Wilson noted Emery did not say he needed to use the restroom, that it was an emergency, or that he was having stomach issues.   Wilson told Emery he could not go inside because he was hot and would have to wait until the end of inside recreation. *Id.*   Shortly thereafter, Emery requested to go inside a second

---

[2] There are two types of recreational time: outside recreation, which takes place in an outside area at the unit located in another, larger zone, that provides access to a water fountain and a restroom (Doc. No. 51-3. p. 2).

time, never mentioning it was an emergency or a medical issue; Wilson denied the request again. Were there to be an emergency or a medical issue during inside recreation, Wilson would call for responders to come to the area to address the issue and escort the inmate involved inside. *Id.* Wilson acknowledged allowing inmate Harrison inside his barracks during inside recreation after his return from work. *Id.* at p. 4. She also allowed inmate Cook inside after receiving a call from staff who requested Cook report for work. *Id.* Wilson did not recall an inmate Martinez being allowed to roam in or around the vestibule during inside recreation time. *Id.* at p. 3.

During the shift briefing, Defendant Davis advised staff not to let inmates in or out without two officers on the floor. *Id.* Because she was the only officer in the vestibule, Wilson called Davis and requested another officer assist her with returning the inmates from recreation. *Id.* at p. 4. Wilson never told Davis inmate Emery asked to go inside, and Emery did not tell Wilson he soiled his pants. *Id.* From Wilson's experience, when an inmate soiled his pants, officers would know because of the odor and other inmates reacting thereto. *Id.* No such event occurred on August 31 when the unit returned from recreation. *Id.*

Defendant Davis stated in a declaration that he had worked in the Grimes Unit his entire ADC career (Doc. No. 51-4, p. 1). He is a shift Lieutenant charged with all daily operations and supervision of subordinate sergeants. *Id.* Defendant Wilson was Defendant Davis's housing sergeant assigned to Housing Unit 4. *Id.* That day, Wilson worked alone in the unit's vestibule, the area outside the barracks 19-22 that included doors to both the basketball side and the handball side of the inside recreation area. *Id.* Defendant Davis had advised the officers during the shift briefing not to let the inmates in or out without two officers being on the floor. Defendant Davis received a call from Defendant Wilson on August 31, 2019, requesting assistance with turning in inmates from the Housing Unit 4 inside recreation area. *Id.* at p 2. Davis sent another officer

4

to assist Wilson. Wilson did not say anything to Davis about inmate Emery having an issue or requesting to go inside during inside recreational time.   *Id.*

Defendant Davis noted inmates received one hour of recreation five days per week, but, depending on the circumstances, may receive more time.   *Id.*   During inside recreation, inmates are provided water in a water cooler, but there are no restrooms available.   Inmates are offered use of the restrooms before going to inside recreation because, once the time starts, they are not allowed to return to barracks before recreation ends.   *Id.* at pp. 2-3.   Should an inmate have an emergency or a medical issue while inside recreation, responders are dispatched who go inside recreation to address the issue.   *Id.* at p. 3.   An inmate is not allowed inside from recreation just because he is hot and being hot is not considered an emergency.   *Id.*   Defendant Davis was unaware that Inmate Emery soiled his pants during recreation until several months after the incident.   *Id.*

## V.   Discussion

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the conduct of a defendant acting under color of state law deprived him of a right, privilege, or immunity secured by the United States Constitution or by federal law.   Plaintiff claims Defendants willingly and purposely displayed a callous disregard to his safety and wellbeing, thus violating his constitutional rights by subjecting him to cruel and unusual conditions and racial discrimination. Defendants argue (1) they are entitled to qualified immunity; (2) the denial of Plaintiff's request to use the bathroom and to drinking water for ninety minutes did not amount to a violation of Plaintiff's constitutional rights; and (3) Plaintiff's equal protection claim against Defendant Wilson should fail as a matter of law.

For the reasons that follow, the Motion for Summary Judgment is granted, Doc. No. 51,

and the complaint is dismissed with prejudice.

A.      § 1983 Individual Capacity Claims

State officials sued in their personal capacities may invoke the affirmative defense of qualified immunity. *Gordon v. Board of Trustees of Univ. of Ark.*, 168 F. Supp.3d 1148, 1155 (E.D. Ark. Mar. 10, 2016). The doctrine of qualified immunity provides that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is a question of law, not a question of fact. *McClendon v. Story County Sheriff's Office*, 403 F.3d 510, 515 (8th Cir. 2005). Thus, issues concerning qualified immunity are appropriately resolved on summary judgment. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (the privilege is "an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.").

Defendants Wilson and Davis ask the Court to dismiss Plaintiff's claims against them in their individual capacities based on qualified immunity because Plaintiff cannot establish that they violated his Eighth Amendment rights and subjected him to cruel and unusual punishment on August 31, 2019, when he alleges he was denied access to a restroom and water for ninety minutes.

To determine whether Defendants are entitled to qualified immunity, the courts generally consider two questions: (1) whether the facts alleged or shown, construed in the light most favorable to the plaintiff, establish a violation of a constitutional or statutory right; and (2) whether that right was so clearly established that a reasonable official would have known that his or her actions were unlawful. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).[3]   Defendants are

---

[3]Courts are "permitted to exercise their sound discretion in deciding which of the two

entitled to qualified immunity only if no reasonable fact finder could answer both questions in the affirmative.   *Nelson v. Correctional Medical Services*, 583 F.3d 522, 528 (8th Cir. 2009).

Based on the above accounts, Defendants state they are entitled to qualified immunity because Emery cannot establish an Eighth Amendment rights violation.   They state first Plaintiff cannot show that Defendant Davis had actual knowledge of a substantial risk to Emery's health or safety. Defendants also argue neither the denial of Plaintiff's request to use the restroom nor the denial of drinking water amounted to a violation of his constitutional rights

Davis denies Wilson said anything to him about inmate Emery having a medical issue or requesting to go inside during inside recreational time. In response, Plaintiff states Defendant Wilson acknowledged in her third response to interrogatories that she made Defendant Davis aware of Plaintiff's request to go inside from the recreational area. Specifically, he points to Defendant Wilson's answer to the following interrogatory: "During the time relevant to this complaint, after being informed that the Plaintiff 'had become too hot' and needed to come inside from recreation call, did you call your supervisor and request assistance so you could let the Plaintiff in his barracks?" *See* Doc. No. 56, p. 33.   The response provided was "Yes. Sgt Wilson also asked for assistance in letting the inmates out for yard call (Rec) back in barracks."   *Id.*

"An official is deliberately indifferent if he or she actually knows of the substantial risk and fails to respond reasonably to it."   *Young v. Selk*, 508 F.3d 868, 873 (8th Cir. 2007).   This requirement "follows from the principle that 'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'"   *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quoting

---

prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."   *Nelson*, 583 F.3d at 528 (quoting *Pearson v. Callahan*, 555 U.S. at 236).

*Wilson v. Seiter*, 501 U.S. 294, 302-303 (1991)). Deliberate indifference "requires a highly culpable state of mind approaching actual intent." *Choate v. Lockhart*, 7 F.3d 1370, 1374 (8th Cir. 1993). The defendant-official's state of mind "must be measured by the official's knowledge at the time in question, not by 'hindsight's perfect vision.'" *Schaub v. VonWald*, 638 F.3d 905, 915 (8th Cir. 2011) (quoting *Lenz v. Wade*, 490 F.3d 991, 993 n.1 (8th Cir. 2007)).

Even accepting Plaintiff's version of the facts as true and construing them in his favor, Defendants are entitled to qualified immunity. Defendants stated inmates are not allowed to come in from recreation just because they become hot; being hot during recreational time is not an emergency that warrants an inmate being allowed inside. Had there been an emergency, inmates would still not be allowed inside but instead responders would come to inside recreation to address any medical issues inmates there may have and escort them out thereafter if necessary. Plaintiff's allegations fail to create the inference that Defendants had actual knowledge of a risk to Plaintiff's health or safety or that Defendants willfully overlooked it.

**B.    Conditions of confinement**

Plaintiff claims he was denied access to drinking water and use of the restroom in violation of his constitutional rights. "[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *County of Sacramento v. Lewis*, 523 U.S. 833, 851 (1998) (citation omitted). The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones. *See Farmer v. Brennan*, 511 U.S. at 832. The cruel and unusual punishment clause of the Eighth Amendment forbid conditions that involve the "wanton and unnecessary infliction of pain," or that are "grossly disproportionate to the severity of the crime." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

8

A prisoner alleging an Eighth Amendment violation must prove both an objective and subjective element. *Wilson v. Seiter*, 501 U.S. at 298. "The defendant's conduct must objectively rise to the level of a constitutional violation by depriving the plaintiff of the minimal civilized measure of life's necessities. *Butler v. Fletcher*, 465 F.3d 340, 344 (8th Cir. 2006). "The defendant's conduct must also reflect a subjective state of mind evincing deliberate indifference to the health or safety of the prisoner." *Id.* (citations and internal quotation marks omitted). Deliberate indifference is established when "the defendant was substantially aware of but disregarded an excessive risk to inmate health or safety." *Id.* However, courts are not concerned with *de minimis* levels of imposition on inmates. *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979).

      1. Access to drinking water

Plaintiff alleges he was denied access to drinking water for over ninety (90) minutes during inside recreation. While there was no access to water fountains, Defendants both stated inmates have access to water available in a water cooler during inside recreation. Based on the facts, the Court does not find Plaintiff's claim rises to the level of an Eighth Amendment violation.

"Access to a sufficient quality and quantity of water for drinking and basic personal hygiene is, of course, a minimal life necessity, but nothing in the Constitution requires that the water must be available on demand." *Waller v. Rice*, 2018 WL 1092346 (W.D. Ark., Feb. 27, 2018). The lack of drinking water may be so temporary that it constitutes only a *de minimis* imposition unworthy of Section 1983 relief. *See Looper v. Sanders*, 2011 WL 81714, at *3-4 (W.D. Ark., March 10, 2011) (providing water only at meal times out of a sink rather than a fountain or other source designated only for drinking water absent any evidence of harm or other ill effects insufficient to state a constitutional claim); *Apodaca v. Sanders*, 2010 WL 996399 (W.D.

Ark., Feb. 25, 2010); *Tesch v. County of Green Lake*, 157 F.3d 465, 476 (7th Cir. 1998) (holding

a disabled inmate's allegations that he was denied assistance in "obtaining drinking water" for

"less than two full days" was *de minimis* and did not state a claim for relief);

Even construing the facts in the light most favorable to Plaintiff, he has not shown the

deprivation of water for ninety minutes denied him of the minimal measure of life's necessities;

nor has Plaintiff demonstrated the deprivation of water posed a substantial risk of serious harm to

his health.   *See Farmer v. Brennan*, 511 U.S. at 834.   In addition, the Court finds any discomfort

Plaintiff may have suffered for ninety minutes to be *de minimis* , and as a result, does not implicate

the Constitution.   *See Smith v. Copeland*, 87 F.3d 265, 268 (8th Cir. 1996).

    2.   Access to the bathroom

Plaintiff also argues Defendants denied him access to the restroom during inside recreation.

Momentary deprivation of the right to use the bathroom, in the absence of physical harm or a

serious risk of contamination, does not rise to the level of an Eighth Amendment violation.

*Revels v. Vincenz*, 382 F.3d 870, 875 (8th Cir. 2004). A court in this district dismissed without

prejudice an inmate's allegation he was not allowed to use the restroom for several hours and wet

himself for failure to state a claim for which relief could be granted. *See Lamar v. Hill*, Case No.

3:18-cv-00161 KGB-PSH, 2018 WL 7958169, at *1 (E.D. Ark., Nov. 13, 2018), *adopted by*, 2019

WL 1509595 (E.D. Ark., Apr. 5, 2019).   Even if viewed in the light most favorable to Plaintiff,

the claim would fail as *de minimis*.

The evidence indicates that, prior to going to inside recreation, inmates are encouraged to

use the restroom.   Once there, inmates are not allowed to leave inside recreation absent an

emergency.   Defendant Wilson stated Plaintiff told her only that he was hot—not that he had to

use the restroom or that he had a medical emergency.   Plaintiff did not allege he has a medical

condition that would prevent him from holding his bladder during recreation time; further, he could relieve himself (as he did) to prevent any physical harm.   While soiling himself may have been uncomfortable and even embarrassing, the facts he alleges are insufficient to state an Eighth Amendment claim.   There is no evidence of the wanton infliction of pain or a deliberate indifference to Plaintiff's health and safety.   Further, the brief deprivation was *de minimis* and did not rise to a constitutional violation.

### C.   Disparate Treatment

Plaintiff claims Defendant Wilson discriminated against him when she would not let him inside because he is white.   He identifies three inmates, Elbert Cook, Alonzo Harrison, and an inmate with the last name Martinez, as inmates with whom he is similarly situated yet treated differently.   Defendants argue Emery was not similarly situated to inmates Harrison, Cook, or Martinez; thus, Defendants contend Emery's equal protection claim against Defendant Wilson must fail as a matter of law. Further, Defendants provide explanations why inmates Cook and Harrison were allowed inside or outside recreation when Plaintiff was not and outright deny that an inmate with the last name Martinez was allowed to roam around the vestibule during the recreation period.

"A fundamental principle of equal protection is that the Constitution only prohibits intentional or purposeful discrimination by the state."   *Klinger v. Department of Corrections*, 31 F.3d 727, 733 (8th Cir. 1994).   Equal protection requires the government to treat similarly situated people alike, and dissimilar treatment of dissimilarly situated persons does not violate equal protection.   *Id.* at 731.

It is clear to the Court that Plaintiff's main complaint appears to be that Defendant Wilson allowed Inmate Cook and Inmate Harrison inside and/or outside the recreation area during a time

when he was denied.   Defendant Wilson denies that an Inmate Martinez was allowed to roam inside during the recreation period, and Plaintiff has failed to put forth any evidence showing that an Inmate Martinez was ever outside for recreation or that inmate Martinez asked Defendant Wilson to go inside so as to use the restroom.   Defendant Wilson testified she received a call from staff requesting Inmate Cook report to work; therefore, she let Inmate Cook inside to get his work clothes from his barracks and let him back out his barracks so he could report to work.   Defendant Wilson testified Inmate Harrison was permitted to enter his barracks during inside recreation because Inmate Wilson was returning to his barracks from work and had not been out to recreation with the other inmates. The evidence (or lack thereof) in this case is similar to that in *Barnes v. Outlaw*, where the Court noted that the Plaintiff inmate's claim of racial and sexual discrimination was "comprised of conclusory allegations and speculation" which failed to include "supporting facts or affidavits demonstrating comparable circumstances....The mere fact that on some occasions a heterosexual or non-black inmate received favorable treatment does not elevate plaintiff's claim into a matter of constitutional concern." No. CV. 04-2577-MI/AN, 2006 WL 840418, at *7 (W.D. Ten., Mar. 30, 2006). Similarly, absent any other evidence in this case that non-white inmates were provided more privileges than Plaintiff, because of his race, or that Defendant Wilson intended to discriminate against Plaintiff because he was white when she allegedly granted non-white inmates the ability to leave the inside recreation area, the Court finds as a matter of law that Defendant did not discriminate against Plaintiff.

IV.   **Conclusion**

IT IS, THEREFORE, ORDERED that Defendants' Motion for Summary Judgment (Doc. No. 51) is GRANTED, and Plaintiff's Complaint is DISMISSED with prejudice.

IT IS SO ORDERED this 12th day of January, 2021.

_____
JEROME T. KEARNEY
UNITED STATES MAGISTRATE JUDGE